**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**
**CIVIL DIVISION**

NICHOLAS WUKOSON,

Plaintiff,

v.

JOSEPHINE BAXTER,
STEVEN POWER,
and THE CITY OF TAMPA

Defendant

_____/

Case No.           07    ʻʻʻ

Division    **DIVISION G**

## COMPLAINT

Plaintiff, NICHOLAS WUKOSON, by and through his undersigned attorneys, hereby

sues Defendants, JOSEPHINE BAXTER, STEVEN POWER, and THE CITY OF TAMPA, as

follows:

### PARTIES

1.     This is an action for damages that exceed $15,000.00.

2.     Plaintiff, NICHOLAS WUKOSON, at all times material hereto, was a resident of

Hillsborough County, Florida, and was a duly licensed Florida Law Enforcement Officer in good

standing with the State of Florida.

3.     Defendant, JOSEPHINE BAXTER, at all times material hereto, is and was an

employee, agent or servant of the CITY OF TAMPA, as a law enforcement officer with the Tampa

Police Department ("TPD"), and was acting within the course and scope of her duties as a law

enforcement officer with TPD, and under the direction and supervision thereunder.

4.     Defendant, STEVEN POWER, at all times material hereto, is and was an

RECEIVED AND FILED

APR 26 2007

CLERK OF CIRCUIT COURT
HILLSBOROUGH COUNTY, FL

employee, agent or servant of the CITY OF TAMPA, as a law enforcement officer with the TPD, and was acting within the course and scope of his duties as a law enforcement officer with TPD, and under the direction and supervision thereunder.

5.      Defendant, CITY OF TAMPA ("CITY"), at all times material hereto, is and was a Florida municipal corporation located in Hillsborough County, organized under the laws of the State of Florida; and acted by and through its employees, agents or servants, including but not limited to Defendants BAXTER and POWER.

## GENERAL ALLEGATIONS

6.      On or about Saturday, June 12, 2004, Plaintiff was residing with his fiancee, Leah Bryant, and Leah's daughter, of whom she had primary custody, Jane Doe (J.D.), who was four years old at the time, in Tampa.

7.      At all times material hereto, Plaintiff was approximately 6'4" and weighed approximately 240 lbs.

8.      At all times material hereto, J.D. was approximately 3'5", and weighed approximately 40 lbs.

9.      On that day, Ms. Bryant had left early in the morning, while J.D. was still sleeping, to go to work.

10.     Plaintiff was to get J.D. fed, bathed and packed as he was to drive J.D. to meet her Grandmother, Sherry Frazier; Grandfather, Michael Frazier; and Aunt, Lauren Bryant, in Bradenton around 1:00 p.m., to spend the week with them.

11.     During the morning, Sherry Frazier contacted Plaintiff and advised that they would like to meet Plaintiff and J.D. earlier and could he meet them.  Plaintiff advised Ms. Frazier that he would try to hurry and get J.D. ready to go.

12.     After J.D. finished eating breakfast, Plaintiff took J.D. to the bathroom to give her a bath. J.D. took the cup of water and caused water to get all over Plaintiff's shirt.

13.     While giving J.D. a bath, Plaintiff was fully clothed, ready to leave, and sat on the edge of the bathtub with his feet in the water.

14.     While bathing J.D., Plaintiff gave a cup of water to J.D. to rinse her hair, as J.D. did not like water on her head and Plaintiff and J.D.'s Mother had been working on this issue with her. J.D. took the cup of water and threw it all over Plaintiff's shirt.

15.     Plaintiff then took J.D., as he was still sitting on the edge of the tub, leaned her over his left knee, and gave her a swat on the bottom.

16.     J.D. began to cry but within moments, Plaintiff was making her laugh and, after completing her bath, J.D. went with Plaintiff to the room to pick out an outfit to wear to see her Grandmother, Grandfather and Aunt.

17.     Plaintiff then left Tampa around 11:00-11:30 a.m., and drove J.D. to meet the Fraziers, during which time they sang songs and talked, then met the Fraziers in Bradenton area around 1:00 p.m., at which time the Fraziers and J.D. went to McDonald's for lunch, and Plaintiff drove back to Tampa.

18.     Later that evening, after driving around in their car looking at houses real estate in the Venice Beach area for several hours, the Fraziers arrived home in Ft. Myers at around 7:00 p.m.

19.     Some time later in the evening after arriving home, Lauren noticed bruises and/or marks on J.D.'s bottom when J.D. was in the bathroom.  Sherry and Michael Frazier were both away from the residence, down four flights, walking both of their dogs.

20.     Lauren told her Mother, Sherry Frazier, about this, and Mrs. Frazier called J.D.'s Mother, Leah Bryant.

21.     When Lauren and Mrs. Frazier asked J.D. what had happened to her, J.D. stated that "Nicky spanked me one time."

22.     At that time, J.D. made no mention of anything sexual in nature.

23.     At no time from the time that the Fraziers picked up J.D. from Plaintiff until the time that Lauren purportedly noticed the bruising on J.D.'s buttocks, had J.D. voiced one complaint or comment about her buttocks or the fact that the Plaintiff had spanked her.

24.     Later that evening, around 10:00 p.m., Mrs. Frazier called and spoke on the phone with Mrs. Bryant, advised of the marks on J.D.'s bottom, and Leah decided to drive to Ft. Myers from Tampa. Leah arrived in Ft. Myers at approximately 1-2:00 a.m., on Sunday, June 13, 2004.

25.     When Mrs. Bryant arrived at the Fraziers, she awoke J.D., asked her what had happened to her bottom, and J.D. told her the same thing she had told Lauren and Mrs. Frazier, to wit: that "Nicky spanked me one time". Again, J.D. did not make any comments regarding anything of a sexual nature having occurred.

26.     Allegedly, either in the late evening of June 12, or in the early morning of June 13, Sherry Frazier took photographs of the bruising on J.D.'s buttocks, which photographs were later turned over to TPD.

27.     The aforementioned photographs depicted marks which were not consistent with sexual abuse.

28.     The aforementioned photographs depicted marks which were not consistent with felony child abuse.

29.     Thereafter, Mrs. Bryant stayed overnight and asked J.D. again, the next day, on Sunday, June 13, 2004, what had happened to her. Again, J.D. simply stated that "Nicky spanked me one time," never mentioning anything sexual in nature.

30.     Mrs. Bryant stayed until Monday, June 14, 2004, at which time she returned to Tampa because she had an ultrasound.

31.     According to Lauren Frazier, J.D. mentioned to her that next morning, Sunday, June 13, 2004, that J.D. had told her that "Nicky stuck his pee-pee in my butt/pee-pee", and Mr. and Mrs. Frazier reported that they heard J.D. make these same statements to them on that same day.

32.     When Leah Bryant called her Mother, Sherry Frazier, on or about June 16, 2004, two or three days after she had returned to Tampa, and three days after Sherry, Michael and Lauren Frazier purportedly overheard J.D. state that "Nicky stuck his pee-pee in my butt/pee-pee", Mrs. Frazier reported to Mrs. Bryant that J.D. was doing fine and that nothing else had been said by anyone about the incident.

33.     Mrs. Bryant, who had left J.D. with the Fraziers, knowing that J.D. was going to be with her Father, Stephen Parker, later that next week, did not ever hear of any allegations of a sexual nature until that next Friday, June 18, 2004, from her Mother, Sherry Frazier, either just before or after Mr. Parker and Mrs. Frazier had taken J.D. to Estero Medical Center for evaluation.

34.     According to Stephen Parker and his wife, Corin Parker, on the night of Thursday, June 17, 2004, J.D. drew a picture of a "penis" and "buttocks".

35.     The report of the medical provider who examined J.D. at the Estero Medical Center stated that "I have examined the anus & external genitalia and don't note any obvious ecchymosis at this time."

36.     The medical provider at Estero Medical Center called the Lee County Sheriff's Department, who came to the center and Stephen Parker and Sherry Frazier were advised to take J.D. that evening to the Hillsborough County Sheriff's Department as they had jurisdiction, or to call the Child Abuse Hotline.

37.     The Lee County Sheriff's Office closed the case as unfounded.

38.     On or about June 19, 2004, Mr. Parker called The Department of Children and Family Services ("DCF") in Lee County.

39.     DCF Agent David Meconitus responded to the call and interviewed all parties.

40.     During the interview process, the Fraziers did not want to be, and were not, interviewed.

41.     Agent Meconitus interviewed J.D. who stated again that "Nicky spanked me one time", and denied sexual misconduct.

42.     As part of the investigation, Agent Meconitus evaluated J.D. and noted that there was neither bruising nor other marks present on J.D.

43.     When Agent Meconitus asked J.D. what the purported drawing of the "penis" was, J.D. stated that it was a "giraffe"; when he asked her what the purported drawing of the "buttocks" was, J.D. stated that it was a drawing of her Daddy (Stephen Parker).

44.     Not until Monday, June 21, 2004, did Stephen Parker take J.D. for examination to Tampa, by reporting the incident to the TPD.

45.     On that same day, TPD took photographs of the back of J.D., which demonstrated a couple of small bruises on the upper middle part of the right side of J.D's back, which bruises were not present in the numerous photographs purportedly taken by Sherry Frazier on or about June 12-13.

46.     No bruising could be seen on J.D.Æs buttocks in these latter photographs taken by TPD.

47.     When Mr. Parker and J.D. arrived at the TPD, J.D. was interviewed by Sergeant Jonathan Gamson, who advised that when he asked J.D. what had happened, that J.D. responded that "Nicky spanked me very hard", and upon Mr. Parker prompting J.D. with "tell him what else...", J.D.

further stated that "Nick put his pee-pee in my butt".

48.     On or before June 21, 2004, Defendant, JOSEPHINE BAXTER ("BAXTER") was assigned as the lead detective on Plaintiff's criminal investigation.

49.     BAXTER, and/or another employee, agent or servant of TPD, ordered a Sexual Assault Medical Examination of J.D., which was performed on June 24, 2004, by Tomika Harris, ARNP, of the Hillsborough County Child Protection Team, who examined J.D. and opined that "[t]he physical findings from today's examination neither supports nor refutes allegations of child sexual abuse."

50.     On June 24, 2004, Detective BAXTER, and/or another employee, agent or servant of TPD, ordered a "forensic interview" of J.D., which was performed by Jennifer Miller, and which was videotaped.

48.     During Ms. Miller's interview of J.D., BAXTER was in the adjacent room watching, listening, and was communicating to Ms. Miller advising Ms. Miller to ask certain questions of J.D.

49.     During the interview, J.D. drew a picture of a penis and buttocks as she purportedly had done on or about June 17, 2004, according to Corin and Stephen Parker.

50.     Prior to the interview of J.D., BAXTER was not only aware of the purported fact that J.D. had drawn a picture of a penis and buttocks, but BAXTER had said drawing in her possession.

51.     There was nothing in the drawing prepared by J.D. during the videotaped forensic interview, which contained many unidentifiable scribbled shapes and lines, which was in any way similar to that drawing provided by Mr. and Mrs. Parker, which was purportedly drawn by J.D.

52.     Throughout the interview, J.D.'s statements of what purportedly happened to her were inconsistent, unreliable, and offered no corroboration of what she had purportedly stated to the Fraziers, the Parkers, the medical provider at Estero Medical Center, during the examination by

Tomika Harris, or anyone else, notwithstanding leading questions by BAXTER, through Ms. Miller.

53.     On June 24, 2004, BAXTER and POWER completed an Arrest Affidavit, after Plaintiff had already been arrested, which they each signed under oath and in which they reference no evidence to support the arrest of Plaintiff.

54.     The Arrest Affidavit, executed under oath by BAXTER and POWER, under the section in which they were to "[s]tate facts to establish probable cause that a crime was committed by the defendant or that the child is dependant", the following:

> "The defendant was arrested per local pickup placed by Detective J.C.
> Baxter.  The def. was taking a bath with the victim at their residence.
> While bathing the def placed (made union) with his penis to the victims
> vagina and anus.  The victim screamed and the def struck the victim.
> The victim suffered multiple bruises on her buttock area.  The victim
> positively identified the defendant as Nicalos Wukoson."

55.     The subject Arrest Affidavit contained material omissions and misrepresentations of facts in that there was no evidence that Plaintiff was "taking a bath with [J.D.]"; there was no evidence that Plaintiff "placed (made union) with his penis to the victims vagina and anus"; or that "the victim screamed".

56.     At the time BAXTER prepared the subject Arrest Affidavit, she knew that the same would be submitted to prosecuting authorities, and that the prosecuting authorities would rely thereon in deciding whether to file charges against Plaintiff.

57.     On June 24, 2004, Plaintiff was arrested at his home, handcuffed, and escorted to a CITY police patrol car with the handcuffs on him, although Plaintiff was not a flight risk.

58.     After Plaintiff was interrogated by BAXTER, Plaintiff voluntarily submitted, at Plaintiff's request, to a lie detector test and recorded statement, after which he was transported to the

Hillsborough County Jail, located on Orient Road.

59.     The CITY arrested Plaintiff for Sexual Battery on a Child (2 counts), pursuant to §794.011(8)(c), Florida Statutes; and for Felony Child Abuse (1 count), pursuant to §827.03(1)(a), Florida Statutes.

60.     At the time of Plaintiff's arrest, there was an absence of probable cause that Plaintiff had committed any criminal offense.

61.     Within hours of the arrest of Plaintiff, Bay News 9, and perhaps other news organizations, had published that Plaintiff had been charged with 2 Counts of Sexual Battery on a Child, and perhaps, 1 Count of Felony Child Abuse.

62.     Within 24 hours after Plaintiff's arrest, either BAXTER, or some other employee, agent or servant of TPD, notified Plaintiff's employer that Plaintiff had been arrested, and had been charged with 2 Counts of Sexual Battery on a Child, and 1 Count of Felony Child Abuse, as a direct result of which Plaintiff lost his job and, consequently, income therefrom.

63.     Prior to the arrest of Plaintiff, other than BAXTER purportedly speaking with Lauren Frazier over the phone, neither BAXTER, POWER, nor any other employee of the CITY ever prepared notes from any conversation with Lauren Frazier; never prepared a written report of interview with Lauren Frazier, nor did anyone ever conduct any sort of formal or, otherwise, in-person interview with Lauren Frazier, the person to whom J.D. first purportedly made the statement to the effect that Plaintiff had sexually battered J.D.

64.     Prior to the arrest of Plaintiff, neither BAXTER, POWER, nor any other employee of the CITY had made themselves aware of the findings of the June 18, 2004 Estero Medical Center Medical Report, in which the medical provider concluded that "I have examined the anus & external genitalia and don't note any obvious ecchymosis at this time," notwithstanding that BAXTER was

aware that the evaluation had been performed and that the report existed.

65.     Prior to the arrest of Plaintiff, BAXTER, POWER, and other employees or agents of the CITY were aware of the Child Protection Team's report concluding that '[t]he physical findings from today's examination neither supports nor refutes allegations of child sexual abuse."

66.     Prior to the arrest of Plaintiff, BAXTER, POWER and/or other employee, agent or servant of the CITY was aware of the DCF investigation and report dated June 19, 2004, generated as a result of Agent Meconitus' interview and evaluation of J.D., as mentioned hereinabove.

67.     On June 21, 2004, Mr. Parker provided to BAXTER, POWER and/or other employee, agent or servant of the CITY, information with which BAXTER could contact Agent Meconitus.

68.     Prior to the arrest of Plaintiff, although BAXTER, POWER and/or other employee, agent or servant of the CITY was aware of the fact of the DCF investigation, interview and evaluation of J.D., any and all of them failed to contact Agent Meconitus to discuss his findings, or to review his report.

69.     Prior to the arrest of Plaintiff, BAXTER, POWER and/or other employee, agent or servant of the CITY failed to notify the local DCF agency, which would have jurisdiction over investigation of the alleged incident, in order that they may conduct an investigation.

70.     Prior to the arrest of Plaintiff, BAXTER, POWER and/or other employee, agent or servant of the CITY was aware of the fact that the aforementioned bruises on J.D.'s mid to upper back were not present on the photographs submitted by Sherry and/or Steven Parker.

71.     Prior to the arrest of Plaintiff, BAXTER, POWER and/or other employee, agent or servant of the CITY failed to inquire as to the source of the bruising on J.D. seen on the photographs taken by TPD, on or about June 21, 2004, nine days after the alleged incident, which was the last day on which Plaintiff had seen J.D.

72.     After reviewing the sexual battery counts for which Plaintiff was arrested, the Office of the State Attorney chose not to file charges against Plaintiff because of the fact that the alleged victim, J.D., did not qualify as a witness, and there was no evidence corroborating the alleged sexual battery.

73.     On September 3, 2004, Plaintiff was charged by the Office of the State Attorney, by Information, in the 13th Judicial Circuit Court, in and for Hillsborough County, Florida, with Felony Child Abuse, under §827.03(1), Florida Statutes.

74.     The Office of the State Attorney relied, in part, upon the Arrest Affidavit executed by BAXTER and POWER, in its decision to file charges against Plaintiff.

75.     The Office of the State Attorney relied, in part, upon the evidence, and lack of evidence, submitted by BAXTER, POWER and other employees, agents or servants of the TPD, in its decision to file charges against Plaintiff.

76.     On or about November 15, 2004, the Office of the State Attorney filed a Nolle Prosequi as to the Felony Child Abuse because the victim did not qualify as a witness, and there was no independent evidence of Felony Child Abuse.

77.     After the arrest of Plaintiff, the Office of the State Attorney never turned over to the Plaintiff, or his counsel, during the discovery process or otherwise, the videotaped interview of J.D.; results from a lie detector test to which Plaintiff voluntarily subjected himself prior to his arrest; the DCF report of Agent Meconitus; the medical report from Estero Medical Center; the medical evaluation/report performed by Tomika Harris at TPD's request; written statements/interviews of Sherry Frazier, Michael Frazier, Lauren Frazier, the Plaintiff herein; the Arrest Affidavit of BAXTER; the drawing of the penis and buttocks purportedly prepared by J.D. on June 17, while with Corin and Steven Parker; or the drawing of the penis and buttocks drawn by J.D. during the

forensic interview by Jennifer Miller.

78.     All of the aforementioned acts and omissions of BAXTER, POWER and all other employees, agents or servants of the CITY, occurred under the color of state law.

79.     On or about April 13, 2006, the Criminal Justice Standards and Training Commission ("Petitioner") filed an Administrative Complaint against Plaintiff, alleging that Plaintiff committed a sexual battery on J.D.; committed felony child or lesser included offense of child abuse; and that he, by that and such other conduct had failed to maintain the qualifications of a Law Enforcement Officer, to wit: failing to have good moral character.

80.     On November 8, 2006, the Honorable T. Kent Wetherell, II, Administrative Law Judge, conducted a full day of an evidentiary hearing, at which the court considered testimony not only of BAXTER and other investigating officers with the TPD, but also of Nurse Tomika Harris (with Child Protection Team, and performed medical examination of J.D.); Jennifer Miller (performed interview of J.D. at instance of Tampa Police Department); the Fraziers (through deposition testimony), Leah Bryant, Stephen and Corin Parker, and Plaintiff.

81.     The Court witnessed the aforementioned videotaped interview of J.D., performed by Jennifer Miller, and considered the Petitioner's motion to admit same into evidence, and held that the tape lacked the sufficient reliability to be admitted into evidence pursuant to §90.803(23), Florida Statutes.

82.     After considering all of the evidence, Judge Wetherell issued a 27 page Recommended Order, on January 22, 2007, opining that the Petitioner failed to prove that Plaintiff sexually battered J.D.; failed to prove that Plaintiff committed felony child abuse on J.D.; and failed to prove that Plaintiff failed to maintain good moral character as required by Florida Administrative Code Rule 11B-27.0011(4)(b).

83.     On February 5, 2007, the Criminal Justice Standards and Training Commission issued a Final Order, accepting Judge Wetherell's Recommended Order, and ordered that the Administrative Complaint against Plaintiff be and hereby is Dismissed.

## - COUNT I -

**False Arrest/False Imprisonment (Sexual Battery on a Minor Child)**
**vs. CITY OF TAMPA**
**(F.S. §768.28)**

84.     Plaintiff, NICHOLAS WUKOSON, hereby sues the CITY OF TAMPA, for violation of §768.28, Florida Statutes, and, as grounds therefore, states as follows:

85.     Plaintiff realleges and incorporates paragraphs 1-69, inclusive, hereinabove, as if fully set forth herein.

86.     Defendants, BAXTER, POWER, and other known and unknown employees, agents or servants of the CITY, proximately caused the arrest, restraint and confinement of Plaintiff.

87.     Defendants, BAXTER, POWER, and other known and unknown employees, agents or servants of the CITY, did not have probable cause to believe that Plaintiff had committed the criminal offense of Sexual Battery on a Minor Child, under §794.011(8)(c), Florida Statutes, in that the facts and circumstances known to BAXTER, POWER, and other known and unknown employees, agents or servants of the CITY, were not sufficient to cause a reasonably cautious person to believe that Plaintiff had committed said alleged criminal offense.

88.     Defendants, BAXTER, POWER, and other employees, agents or servants of the CITY, intentionally caused Plaintiff to be arrested, restrained and confined for the alleged criminal offense of Sexual Battery on a Minor Child.

89.     Defendants, BAXTER, POWER, and other agents, employees or servants of the

CITY, either purposely caused Plaintiff's arrest, restraint and confinement or otherwise acted with knowledge that Plaintiff's arrest, restraint and imprisonment would be substantially certain to occur.

90.     The arrest, restraint and confinement of Plaintiff was against Plaintiff's will, and was unlawful, unreasonable, and without color of lawful authority.

91.     The actions and omissions of BAXTER, POWER, and other known and unknown agents, employees or servants of the CITY, which proximately caused the arrest, restraint and confinement of Plaintiff, were committed and occurred during the course and scope of their respective agency or employment with the CITY OF TAMPA.

92.     As a direct and proximate result of the actions and omissions of BAXTER, and other known and unknown agents, employee or servants of Defendant, CITY, Plaintiff has been brought into public scandal, suffered great humiliation, mental suffering and damaged reputation.

93.     As a further direct and proximate result of the actions and omissions of BAXTER, POWER, and other known and unknown agents, employees or servants of the CITY, Plaintiff suffered a loss of liberty and freedom, mental anguish, loss of earnings, loss of capacity for the enjoyment of life, and diminished opportunity to pursue a career in law enforcement at the State and Federal levels.

94.     All of the aforementioned Plaintiff's losses are either continuing of permanent in nature, and he will continue to suffer said losses in the future, all in violation of Plaintiff's rights.

WHEREFORE, Plaintiff, NICHOLAS WUKOSON, respectfully requests the entry of Judgment in his favor against Defendant, CITY OF TAMPA, for compensatory damages, costs incurred in this matter, such other relief as this Court deems just and appropriate, and demands trial by jury of all issues so triable.

## - COUNT II -

### False Arrest/False Imprisonment (Sexual Battery on a Minor Child)
### vs. JOSEPHINE BAXTER, individually
### (42 U.S.C. §1983)

Plaintiff, NICHOLAS WUKOSON, hereby sues the Defendant, JOSEPHINE BAXTER,

individually, for violation of his Constitutional rights, and, as grounds therefore, states as follows:

95.     Plaintiff realleges and incorporates paragraphs 1-83, inclusive, hereinabove, as if

fully set forth herein.

96.     The actions of Defendant, BAXTER, individually, in causing the arrest, restraint and

confinement of Plaintiff, for Sexual Battery on a Child, in the absence of probable cause, were taken

in the absence of lawful authority, and constitute the false arrest/false imprisonment of Plaintiff.

97.     The conduct of Defendant, BAXTER, individually, towards Plaintiff was objectively

unreasonable and violated Plaintiff's clearly established rights under the Fourth and Fourteenth

Amendments of the United States Constitution, and 42 U.S.C. §1983, to be free from seizure and

arrest in the absence of probable cause; and deprivation of life, liberty or property without due

process of law.

98.     Plaintiff is entitled to a reasonable attorney's fee pursuant to 42 U.S.C. §1988.

99.     As a direct and proximate result of the acts of the described herein, in violation of 42

U.S.C. §1983, Plaintiff has been brought into public scandal, suffered great humiliation, mental

suffering and damaged reputation.

100.     As a further direct and proximate result of the actions and omissions of BAXTER,

Plaintiff suffered a loss of liberty and freedom, mental anguish, loss of earnings, loss of capacity for

the enjoyment of life, and diminished opportunity to pursue a career in law enforcement at the State

and Federal levels.

101.    All of the aforementioned Plaintiff's losses are either continuing of permanent in nature, and he will continue to suffer said losses in the future, all in violation of Plaintiff's rights.

WHEREFORE, Plaintiff, NICHOLAS WUKOSON, respectfully requests that this Honorable Court enter judgment against, JOSEPHINE BAXTER, for compensatory damages, punitive damages, the costs incurred in bringing the instant action, a reasonable attorney's fees, and any other relief this Court deems equitable and just.

### - COUNT III -

**False Arrest/False Imprisonment (Sexual Battery on a Minor Child)**
**vs. STEVEN POWER, individually**
**(42 U.S.C. §1983)**

Plaintiff, NICHOLAS WUKOSON, hereby sues the Defendant, STEVEN POWER, individually, for violation of his Constitutional rights, and, as grounds therefore, states as follows:

102.    Plaintiff realleges and incorporates paragraphs 1-83, inclusive, hereinabove, as if fully set forth herein.

103.    The actions of Defendant, POWER, individually, in causing the arrest, restraint and confinement of Plaintiff, for Sexual Battery on a Child, in the absence of probable cause, were taken in the absence of lawful authority, and constitute the false arrest/false imprisonment of Plaintiff.

104.    The conduct of Defendant, POWER, individually, towards Plaintiff was objectively unreasonable and violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. §1983, to be free from seizure and arrest in the absence of probable cause; and deprivation of life, liberty or property without due process of law.

105.    Plaintiff is entitled to a reasonable attorney's fee pursuant to 42 U.S.C. §1988.

106.    As a direct and proximate result of the acts of the described herein, in violation of 42 U.S.C. §1983, Plaintiff has been brought into public scandal, suffered great humiliation, mental suffering and damaged reputation.

107.    As a further direct and proximate result of the actions and omissions of POWER, Plaintiff suffered a loss of liberty and freedom, mental anguish, loss of earnings, loss of capacity for the enjoyment of life, and diminished opportunity to pursue a career in law enforcement at the State and Federal levels.

108.    All of the aforementioned Plaintiff's losses are either continuing of permanent in nature, and he will continue to suffer said losses in the future, all in violation of Plaintiff's rights.

WHEREFORE, Plaintiff, NICHOLAS WUKOSON, respectfully requests that this Honorable Court enter judgment against Defendant, STEVEN POWER, for compensatory damages, punitive damages, the costs incurred in bringing the instant action, a reasonable attorney's fees, and any other relief this Court deems equitable and just.

## - COUNT IV -

### False Arrest/False Imprisonment (Child Abuse)
### vs. CITY OF TAMPA
### (F.S. §768.28)

Plaintiff, NICHOLAS WUKOSON, hereby sues the Defendant, the CITY OF TAMPA, for violation of §768.28, Florida Statutes, and, as grounds therefore, states as follows:

109.    Plaintiff realleges and incorporates paragraphs 1-83, inclusive, hereinabove, as if fully set forth herein.

110.    Defendants, BAXTER, POWER, and other known and unknown employees, agents or servants of the CITY, proximately caused the arrest, restraint and confinement of Plaintiff.

111.   Defendants, BAXTER, POWER, and other known and unknown employees, agents or servants of the CITY, did not have probable cause to believe that Plaintiff had committed the criminal offense of Felony Child Abuse, under §827.03(1)(a), Florida Statutes, in that the facts and circumstances known to BAXTER, POWER, and other known and unknown employees, agents or servants of the CITY, were not sufficient to cause a reasonably cautious person to believe that Plaintiff had committed said alleged criminal offense.

112.   Defendants, BAXTER, POWER, and other agents, employees or servants of the CITY, intentionally caused Plaintiff to be arrested, restrained and confined for the alleged criminal offense of Felony Child Abuse.

113.   Defendants, BAXTER, POWER, and other agents, employees or servants of the CITY, either purposely caused Plaintiff's arrest, restraint or confinement or otherwise acted with knowledge that Plaintiff's arrest, restraint or confinement would be substantially certain to occur.

114.   The arrest, restraint and confinement of Plaintiff was against Plaintiff's will, and was unlawful, unreasonable, and without color of lawful authority.

115.   The actions and omissions of BAXTER, POWER, and other known and unknown agents, employees or servants of the CITY, which proximately caused the arrest, restraint and confinement of Plaintiff, were committed and occurred during the course and scope of their respective agency or employment with the CITY OF TAMPA. As a direct and proximate result of the actions and omissions of BAXTER, and other known and unknown agents, employee or servants of Defendant, CITY OF TAMPA, Plaintiff has been brought into public scandal, suffered great humiliation, mental suffering and damaged reputation.

116.   As a further direct and proximate result of the actions and omissions of BAXTER, POWER, and other known and unknown agents, employees or servants of the CITY, Plaintiff

suffered a loss of liberty and freedom, mental anguish, loss of earnings, loss of capacity for the enjoyment of life, and diminished opportunity to pursue a career in law enforcement at the State and Federal levels.

117.    All of the aforementioned Plaintiff's losses are either continuing of permanent in nature, and he will continue to suffer said losses in the future, all in violation of Plaintiff's rights.

WHEREFORE, Plaintiff, NICHOLAS WUKOSON, respectfully requests the entry of Judgment in his favor against Defendant, CITY OF TAMPA, for compensatory damages, costs incurred in this matter, such other relief as this Court deems just and appropriate, and demands trial by jury of all issues so triable.

## - COUNT V -

### False Arrest/False Imprisonment (Child Abuse)
### vs. JOSEPHINE BAXTER, individually
### (42 U.S.C. §1983)

Plaintiff, NICHOLAS WUKOSON, hereby sues the Defendant, JOSEPHINE BAXTER, individually, for violation of his Constitutional rights, and, as grounds therefore, states as follows:

118.    Plaintiff realleges and incorporates paragraphs 1-83, inclusive, hereinabove, as if fully set forth herein.

119.    The actions of Defendant, BAXTER, individually, in causing the arrest, restraint and confinement of Plaintiff, for Child Abuse, in the absence of probable cause, were taken in the absence of lawful authority, and constitute the false arrest/false imprisonment of Plaintiff.

120.    The conduct of Defendant, BAXTER, individually, towards Plaintiff was objectively unreasonable and violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. §1983, to be free from seizure and

arrest in the absence of probable cause; and deprivation of life, liberty or property without due process of law.

121.    Plaintiff is entitled to a reasonable attorney's fee pursuant to 42 U.S.C. §1988. As a direct and proximate result of the acts of the described herein, in violation of 42 U.S.C. §1983, Plaintiff has been brought into public scandal, suffered great humiliation, mental suffering and damaged reputation.

122.    As a further direct and proximate result of the actions and omissions of BAXTER, Plaintiff suffered a loss of liberty and freedom, mental anguish, loss of earnings, loss of capacity for the enjoyment of life, and diminished opportunity to pursue a career in law enforcement at the State and Federal levels.

123.    All of the aforementioned Plaintiff's losses are either continuing of permanent in nature, and he will continue to suffer said losses in the future, all in violation of Plaintiff's rights.

WHEREFORE, Plaintiff, NICHOLAS WUKOSON, respectfully requests that this Honorable Court enter judgment against Defendant, JOSEPHINE BAXTER, for compensatory damages, punitive damages, the costs incurred in bringing the instant action, a reasonable attorney's fees, and any other relief this Court deems equitable and just.

### - COUNT VI -

### False Arrest/False Imprisonment (Child Abuse)
### vs. STEVEN POWER, individually
### (42 U.S.C. §1983)

Plaintiff, NICHOLAS WUKOSON, hereby sues the Defendant, STEVEN POWER, individually, for violation of his Constitutional rights, and, as grounds therefore, states as follows:

124.    Plaintiff realleges and incorporates paragraphs 1-83, inclusive, hereinabove, as if

fully set forth herein.

125.    The actions of Defendant, POWER, individually, in causing the arrest, restraint and confinement of Plaintiff, for Child Abuse, in the absence of probable cause, were taken in the absence of lawful authority, and constitute the false arrest/false imprisonment of Plaintiff.

126.    The conduct of Defendant, POWER, individually, towards Plaintiff was objectively unreasonable and violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. §1983, to be free from seizure and arrest in the absence of probable cause; and deprivation of life, liberty or property without due process of law.

127.    Plaintiff is entitled to a reasonable attorney's fee pursuant to 42 U.S.C. §1988.

128.    As a direct and proximate result of the acts of the described herein, in violation of 42 U.S.C. §1983, Plaintiff has been brought into public scandal, suffered great humiliation, mental suffering and damaged reputation.

129.    As a further direct and proximate result of the actions and omissions of BAXTER, Plaintiff suffered a loss of liberty and freedom, mental anguish, loss of earnings, loss of capacity for the enjoyment of life, and diminished opportunity to pursue a career in law enforcement at the State and Federal levels.

130.    All of the aforementioned Plaintiff's losses are either continuing of permanent in nature, and he will continue to suffer said losses in the future, all in violation of Plaintiff's rights.

WHEREFORE, Plaintiff, NICHOLAS WUKOSON, respectfully requests that this Honorable Court enter judgment against Defendant, STEVEN POWER, for compensatory damages, punitive damages, the costs incurred in bringing the instant action, a reasonable attorney's fees, and any other relief this Court deems equitable and just.

## - COUNT VII -

**Malicious Prosecution vs. JOSEPHINE BAXTER, individually
(42 U.S.C. §1983)**

Plaintiff, NICHOLAS WUKOSON, hereby sues the Defendant, JOSEPHINE BAXTER,

individually, for violation of his Constitutional rights, and, as grounds therefore, states as follows:

131.    Plaintiff realleges and incorporates paragraphs 1-83, inclusive, hereinabove, as if

fully set forth herein.

132.    The actions of Defendant, BAXTER, proximately caused, with malice, a criminal

proceeding to be initiated or continued against Plaintiff, to wit, the charges of Sexual Battery on a

Minor Child.

133.    The subject criminal proceeding was initiated or continued in the absence of probable

cause, as more specifically set forth hereinabove.

134.    The subject criminal proceeding resulted in a bona fide termination in favor of

Plaintiff in that the Office of the State Attorney filed a Nolle Prosequi as to all charges contained

therein.

135.    The conduct of Defendant, BAXTER, individually, towards Plaintiff was objectively

unreasonable and violated Plaintiff's clearly established rights under the Fourth and Fourteenth

Amendments of the United States Constitution, and 42 U.S.C. §1983, to be free from seizure and

arrest in the absence of probable cause; and deprivation of life, liberty or property without due

process of law.

136.    Plaintiff is entitled to a reasonable attorney's fee pursuant to 42 U.S.C. §1988.

137.    As a direct and proximate result of the acts of the described herein, in violation of 42

U.S.C. §1983, Plaintiff has been brought into public scandal, suffered great humiliation, mental suffering and damaged reputation.

138.    As a further direct and proximate result of the actions and omissions of BAXTER, Plaintiff suffered a loss of liberty and freedom, mental anguish, loss of earnings, loss of capacity for the enjoyment of life, and diminished opportunity to pursue a career in law enforcement at the State and Federal levels.

139.    All of the aforementioned Plaintiff's losses are either continuing of permanent in nature, and he will continue to suffer said losses in the future, all in violation of Plaintiff's rights.

WHEREFORE, Plaintiff, NICHOLAS WUKOSON, respectfully requests that this Honorable Court enter judgment against JOSEPHINE BAXTER, for compensatory damages, punitive damages, the costs incurred in bringing the instant action, a reasonable attorney's fees, and any other relief this Court deems equitable and just.

### - COUNT VIII -

**Malicious Prosecution vs. STEVEN POWER, individually**
**(42 U.S.C. §1983)**

Plaintiff, NICHOLAS WUKOSON, hereby sues the Defendant, STEVEN POWER, individually, for violation of his Constitutional rights, and, as grounds therefore, states as follows:

140.    Plaintiff realleges and incorporates paragraphs 1-83, inclusive, hereinabove, as if fully set forth herein.

141.    The actions of Defendant, POWER, proximately caused, with malice, a criminal proceeding to be initiated or continued against Plaintiff, to wit, the charges of Sexual Battery on a Minor Child.

142.    The subject criminal proceeding was initiated or continued in the absence of probable

cause, as more specifically set forth hereinabove.

143.    The subject criminal proceeding resulted in a bona fide termination in favor of Plaintiff in that the Office of the State Attorney filed a Nolle Prosequi as to all charges contained therein.

144.    The conduct of Defendant, POWER, individually, towards Plaintiff was objectively unreasonable and violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. §1983, to be free from seizure and arrest in the absence of probable cause; and deprivation of life, liberty or property without due process of law.

145.    Plaintiff is entitled to a reasonable attorney's fee pursuant to 42 U.S.C. §1988.

146.    As a direct and proximate result of the acts of the described herein, in violation of 42 U.S.C. §1983, Plaintiff has been brought into public scandal, suffered great humiliation, mental suffering and damaged reputation.

147.    As a further direct and proximate result of the actions and omissions of BAXTER, Plaintiff suffered a loss of liberty and freedom, mental anguish, loss of earnings, loss of capacity for the enjoyment of life, and diminished opportunity to pursue a career in law enforcement at the State and Federal levels.

148.    All of the aforementioned Plaintiff's losses are either continuing of permanent in nature, and he will continue to suffer said losses in the future, all in violation of Plaintiff's rights.

WHEREFORE, Plaintiff, NICHOLAS WUKOSON, respectfully requests that this Honorable Court enter judgment against STEVEN POWER, for compensatory damages, punitive damages, the

costs incurred in bringing the instant action, a reasonable attorney's fees, and any other relief this

Court deems equitable and just.

Dated this 27th day of April, 2007.

Respectfully submitted,

T. PATTON YOUNGBLOOD, JR., P.A.
106 S. Tampania Ave., Suite 100
Tampa, Florida 33609
(813) 258-5883; Fax: (813) 258-0732

By:_____
    T. PATTON YOUNGBLOOD, JR., Esquire
    Florida Bar No.: 0849243