UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICHOLAS WUKOSON,

      Plaintiff,

v.                                                            Case No. 8:07-cv-1360-T-24 EAJ

JOSEPHINE BAXTER, ET AL.,

      Defendants.

_____/

**ORDER**

This cause comes before the Court on Defendant Josephine Baxter's Motion for Summary Judgment. (Doc. No. 17). Plaintiff opposes the motion. (Doc. No. 24).

**I. Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

## II.  Background

On June 12, 2004, Plaintiff Nicholas Wukoson, a law enforcement officer, lived with his fiancee, Leah Bryant, and her four year old daughter, C.P., in Tampa, Florida.  On that day, Bryant left in the morning to go to work, and Plaintiff was supposed to feed, bathe, and pack for C.P. and then drive her to meet her grandparents in Bradenton.

When Plaintiff gave C.P. a bath that morning, he sat on the edge of the bathtub, fully clothed, with his feet in the water.  Plaintiff gave C.P. a cup of water so that she could rinse her hair, and C.P. took the cup of water and threw it on Plaintiff.  Plaintiff then took C.P., leaned her over his knee, and gave her a swat on her buttocks.  C.P. cried for a moment, and then she was fine and Plaintiff finished giving her a bath.

Plaintiff dropped C.P. off with her grandparents in Bradenton around 1:00 p.m.  C.P. spent the rest of the day driving around with her grandparents, who were looking at real estate in Venice Beach.  C.P. and her grandparents arrived at the grandparents' home in Fort Meyers around 7:00 p.m.

Later that evening, C.P.'s aunt, Lauren Frazier, noticed bruises on C.P.'s buttocks when C.P. was in the bathroom.  Frazier told her parents (C.P.'s grandparents) about the bruises, and they asked C.P. what had happened.  C.P. responded that "Nicky spanked me one time."  C.P. did not say that anything sexual in nature occurred, nor did she complain of pain or discomfort at any time during the car ride that day.

Later that evening, around 10:00 p.m., C.P.'s grandmother spoke with C.P.'s mother on the phone and told her about the marks on C.P.'s buttocks.  Bryant then drove from Tampa to Fort Meyers and arrived around 2:00 a.m.  When she arrived, Bryant woke C.P. and asked her

what had happened.  C.P. responded that "Nicky spanked me one time."  At some point, either late in the evening on June 12th or early in the morning of June 13th, C.P.'s grandmother took photographs of the bruising on C.P.'s buttocks.

Bryant stayed overnight, and she again questioned C.P. as to what had happened.  Again, C.P. simply stated that "Nicky spanked me one time."  However, according to Frazier, at some point in the morning of June 13th, C.P. told Frazier that "Nicky had stuck his pee-pee in my butt/pee-pee."  C.P.'s grandparents state that C.P. also made this statement to them on the same day.

Bryant left C.P. with her parents, and Bryant returned to Tampa.  When Bryant called her parents on June 16th to check on C.P., her parents told Bryant that C.P. was doing fine.  They did not tell Bryant about C.P.'s statement that "Nicky had stuck his pee-pee in my butt/pee-pee."

After spending time with her grandparents, C.P. was scheduled to visit with her father, Stephen Parker, who also lived in Fort Meyers.  C.P.'s grandparents told Parker about the incident, and on June 18th, C.P. was taken to Estero Island Medical Center in Fort Meyers for a medical examination.  The medical provider asked C.P. what happened to her buttocks, and C.P. said, "Nicky spanked me."  (Doc. No. 17-3).  The medical provider asked C.P. if she hurt anywhere, and C.P. responded, "when Nicky put his pee pee in my bottom."  (Doc. No. 17-3).  The medical provider examined C.P. and "saw what appear[ed] to be fading bruises on both buttocks."  (Doc. No. 17-3).  However, the medical provider stated that she "examined the anus and external genitalia and [did not] note any obvious [bruising] at this time."  (Doc. No. 17-3).

On June 19th, Parker called the Department of Children and Family Services ("DCF") in Lee County.  DCF Agent David Meconitus responded to the call, and he interviewed C.P.

Meconitus examined C.P., including her buttocks, and "found no visible marks or bruises." (Doc. No. 17-2).

On June 21st, Parker took C.P. to the Tampa Police Department.[1] C.P. was interviewed by Sergeant Jonathon Gamson. When Gamson asked C.P. what had happened, C.P. responded that "Nicky spanked me very hard." Parker prompted C.P. by saying "tell him what else . . ." and C.P. stated that "Nick put his pee-pee in my butt."

Thereafter, Detective Josephine Baxter was assigned to the case and met with Parker, his girlfriend, and C.P. Baxter observed a few spots or marks on C.P.'s back and buttocks, and so she had three photographs taken.[2] (Doc. No. 18). Baxter arranged for a forensic interview of C.P. at the Children's Justice Center and arranged for a medical examination by the Hillsborough County Child Protection Team ("CPT"). (Doc. No. 18). Baxter also met with C.P.'s grandmother and received six photographs that the grandmother had taken of the bruising on C.P.'s buttocks.[3] (Doc. No. 18). When Baxter viewed the six photographs, she observed marks on C.P.'s buttocks, and she noted that the marks were consistent with the spanking allegation. (Doc. No. 18).

Baxter was advised that C.P. was taken to the Estero Island Medical Center in Fort Meyers, but she did not obtain or review the medical report. (Doc. No. 18). Baxter was also advised that DCF in Lee County had investigated the child abuse allegation, but she did not

---

[1] Lee County did not have jurisdiction over the incident, and Parker was advised that a report needed to be made in Hillsborough County.

[2] These photographs were filed under seal in this case, along with the photographs taken by C.P.'s grandmother. The photographs that Detective Baxter had taken are the three photographs in which C.P. is wearing a red shirt.

[3] These photographs were filed under seal.

obtain or review the DCF reports.  (Doc. No. 18).

On June 24th, a videotaped forensic interview of C.P. was conducted outside of the presence of her father and grandmother.  At the beginning of the forensic interview, the interviewer established that C.P. was able to differentiate between a boy and a girl, identify the different body parts, and showed that she understood the difference between a truth and a lie.  Additionally, the interviewer asked C.P. open-ended questions throughout the interview.

During the interview, C.P. stated that "Nick spanked me and stuck his pee pee in my butt."  C.P. repeatedly told the interviewer that Plaintiff stuck his pee pee in her butt, and/or stuck his pee pee on her pee pee.  However, at some points during the interview, C.P. made statements that did not make sense.  For example, near the end of the interview, C.P. stated that Plaintiff put a mouse on his pee pee and he put it on her butt and pee pee.

Also on June 24th, the Hillsborough County CPT conducted a medical examination of C.P.  C.P. told the examiner that "Nicky put his pee pee in my pee pee and in my butt then he spanked my bottom."  (Doc. No. 18-3).  After examining C.P., the examiner concluded that "[t]he physical findings from today's examination neither supports nor refutes allegations of child sexual abuse."  (Doc. No. 18-3).

Thereafter, on June 24th, Baxter issued a pick up order requesting the arrest of Plaintiff.  Plaintiff was arrested the same day and was transported to Tampa Police Headquarters to speak with Baxter.  The arrest affidavit that was executed under oath by Baxter stated:

> The def was taking a bath with the victim at their residence.  While bathing the def placed (made union) with his penis to the victims [sic] vagina and anus.  The victim screamed and the def struck the victim.  The victim suffered multiple bruises on her buttock area.  The victim positively identified the defendant as Nicalos [sic] Wukoson.

5

(Doc. No. 24-4).

Plaintiff was arrested on two counts of sexual battery on a child[4] and one count of felony child abuse[5]. However, the state attorney did not file charges of sexual battery against Plaintiff, because the child did not qualify as a witness and there was no evidence corroborating the alleged sexual battery. Plaintiff was charged with felony child abuse, but the state attorney later filed a Nolle Prosequi as to that charge, because the child did not qualify as a witness and there was no independent evidence of felony child abuse.

Thereafter, Plaintiff filed the instant lawsuit, in which he asserts three claims against Baxter in her individual capacity: (1) a § 1983 claim for false arrest/false imprisonment regarding the sexual battery charge; (2) a § 1983 claim for false arrest/false imprisonment regarding the child abuse charge; and (3) a § 1983 claim for malicious prosecution. Baxter moves for summary judgment on all claims.

### III. Motion for Summary Judgment

Baxter moves for summary judgment based on the defense of qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346

---

[4]Pursuant to Florida Statute § 794.011(8)(c), "a person who is in a position of familial or custodial authority to a person less than 18 years of age and who . . . [e]ngages in any act with that person while the person is less than 12 years of age which constitutes sexual battery under paragraph (1)(h)" commits a felony. Sexual battery under paragraph (1)(h) is defined as "oral, anal, or vaginal . . . union with[] the sexual organ of another."

[5]Pursuant to Florida Statute 827.03(1)(a), child abuse is "[i]ntentional infliction of physical or mental injury upon a child."

(11th Cir. 2002)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Thus, "[a]n officer will be entitled to qualified immunity if his actions were objectively reasonable." Id. (citation omitted).

In determining whether Baxter is entitled to qualified immunity, Baxter must prove that she was acting within the scope of her discretionary authority.  See id. (citation omitted).  Plaintiff does not dispute that she was doing so.

Next, the burden shifts to Plaintiff to show that qualified immunity is not appropriate.  See id. (citation omitted).  "The Supreme Court has set forth a two-part test for the qualified immunity analysis."  Id.  The first inquiry is whether, taking the facts in the light most favorable to Plaintiff, the facts alleged show that Baxter violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  If no constitutional violation occurred under Plaintiff's version of the facts, the inquiry ends.  See id.

If the Court finds that there has been a constitutional violation under Plaintiff's version of the facts, the next step is to determine whether the right was clearly established.  See id.  This determination "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Id.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202 (citation omitted).

Baxter urges the Court to find that she is entitled to qualified immunity because, under Plaintiff's version of the facts, there was no constitutional violation.  The Court agrees with Baxter.

### A. False Arrest Claims

An arrest without probable cause violates the Fourth Amendment.  See Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003).  However, if the officer has probable cause for the arrest, the plaintiff cannot succeed on a § 1983 claim for false arrest.  See Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990).  "For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances."  Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002).  As explained by one court:

> This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction.

Id. (internal quotation marks and citations omitted).

Even if probable cause does not exist, an officer is entitled to qualified immunity if there was arguable probable cause for the arrest.  See Durrothy, 351 F.3d at 1089.  Arguable probable cause has been explained as follows:

> Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest.  In determining whether arguable probable cause exists, [courts] apply an objective standard, asking whether the officer's actions are objectively reasonable . . . regardless of the officer's underlying intent or motivation.  Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors.

Lee, 284 F.3d at 1195 (internal quotation marks and citations omitted).  Furthermore, the validity of an arrest is not affected by an acquittal or the charges being dropped.  See Marx, 905 F.2d at 1507.

8

Baxter argues that the Court should not look at the two § 1983 claims based on false arrest separately in its qualified immunity analysis, because if Plaintiff's arrest is supported by probable cause for *any* offense, then his § 1983 claims based on false arrest fail. See Lee, 284 F.3d at 1195-96. The Court agrees.

Plaintiff was arrested for sexual battery and child abuse. Baxter argues that there was probable cause for the arrest of Plaintiff based on the following: (1) C.P. told her grandparents, her father, Sergeant Gamson, the forensic interviewer, and the medical examiner at the Hillsborough County CPT that Plaintiff had "put his pee pee in [her] but;" and (2) Baxter was given photographs taken by C.P.'s grandmother that show bruising on C.P.'s buttocks. Plaintiff makes several arguments in opposition, and the Court will address each argument and analyze each charge.[6]

Plaintiff was arrested for sexual battery under Florida Statute § 794.011. Sexual battery under § 794.011(1)(h) is defined as "oral, anal, or vaginal . . . union with[] the sexual organ of another." As explained below, the Court finds that there was probable cause for arresting Plaintiff for sexual battery, or at least arguable probable cause for the arrest, based on C.P.'s allegations.

---

[6]In addition to the arguments detailed in this Order, Plaintiff argues that (1) a picture allegedly drawn by C.P. of a penis and a buttocks was not actually drawn by her, and (2) Baxter never interviewed Frazier, and if she had done so, she would have found Frazier's credibility to be questionable. These arguments do not change the result in this case.

The Court completely disregarded the picture allegedly drawn by C.P., so the Court need not address the picture further. Further, the Court accepts as true Plaintiff's allegations that Baxter did not interview Frazier and that Frazier's credibility was questionable. However, that is of no consequence, because even assuming that Frazier lied about C.P. stating to her that Plaintiff stuck his pee pee in her butt/pee pee, C.P. also made that statement to her grandparents. (Doc. No. 2, ¶ 31).

9

Plaintiff argues that C.P.'s allegations were not reliable or trustworthy, and as such, her allegations should not be considered when determining if there was probable cause for his arrest. The Court rejects this argument.

The Court finds that it was reasonable for Baxter to rely on the statements of C.P., despite the fact that she was four years old when making the statements and some of her statements did not make sense. At the beginning of the forensic interview, C.P. was able to differentiate between a boy and a girl, identify the different body parts, and showed that she understood the difference between a truth and a lie. Further, C.P. consistently and repeatedly stated that Plaintiff stuck his pee pee in her butt and/or on her pee pee in the bathroom while she was taking a bath. Courts have found that statements by child victims, even as young as four years old, should be considered and must be evaluated in light of the child's age. See Marx, 905 F.2d at 1506 (stating that the four year old child's statement should have been considered in determining whether probable cause existed, but noting that viewing her statements with skepticism was appropriate given her age, injuries, and state of mind); Lowe v. Aldridge, 958 F.2d 1565, 1571(11th Cir. 1992)(stating that there was "no basis for holding that police officers cannot depend on the uncorroborated evidence of a child victim of sexual abuse for the request of a warrant," and noting that Marx did not "rule out a valid warrant based on such evidence alone"); Rankin v. Evans, 133 F.3d 1425, 1440 (11th Cir. 1998)(stating that the police officer was entitled to rely to a meaningful degree on the three-and-a half year old child's statement of sexual abuse when determining the existence of probable cause).

Next, Plaintiff argues that C.P. made inconsistent statements, and as such, her statements are not reliable. Specifically, Plaintiff points out that C.P. told her mother and DCF Agent

10

Meconitus only that Plaintiff spanked her; she did not mention that anything sexual occurred. However, there is no allegation that C.P.'s mother asked C.P. if anything sexual had occurred, so the fact that C.P. did not volunteer such information at first is not sufficient to completely discount her statements of sexual contact. Further, while Plaintiff alleges in the complaint that C.P. "denied sexual misconduct" when she spoke with Meconitus, Plaintiff has not put forth any evidence in support of the implicit allegation that Meconitus specifically asked C.P. whether anything sexual occurred and that C.P. specifically denied it. Plaintiff has not submitted an affidavit from Meconitus or his DCF report. Thus, at best, the Court can only conclude that C.P. did not volunteer such information to Meconitus, and again, that does not require the police or this Court to completely discount her later, repeated statements of sexual contact.

Next, Plaintiff argues that Baxter conducted an insufficient investigation, because she did not obtain the medical report from Estero Island Medical Center in Fort Meyers. The Court rejects this argument. To begin with, Baxter requested a copy of the report from Parker and C.P.'s grandmother, but Baxter did not receive one. (Doc. No. 18: Baxter affidavit, ¶ 35). Further, the fact that the medical provider stated that she "examined the anus and external genitalia and [did not] note any obvious [bruising] at this time" does not undermine a conclusion of sexual battery, since sexual battery can consist of a "union" with C.P.'s genitalia, rather than penetration. (Doc. No. 17-3).

Next, Plaintiff points out that C.P.'s grandparents did not report the alleged sexual abuse to Parker until June 17th (four days after C.P. told them about it) and did not tell Bryant until later. Therefore, Plaintiff argues that the delay in reporting the abuse raises questions as to whether the alleged sexual abuse really occurred. The Court rejects this argument, as a

reasonable police officer would not disregard a victim's complaint merely because she took a few days to report the alleged sexual abuse.

Next, Plaintiff argues that Baxter should not have relied on C.P.'s statements during the forensic interview, because they would not be admissible at trial. In support of this argument, Plaintiff points to an order that an administrative law judge issued relating to an administrative complaint filed against Plaintiff for failing to maintain good moral character (as required in order to remain a law enforcement officer) due to C.P.'s allegations. In that order, the administrative law judge found C.P.'s statements during the forensic interview to be unreliable under Florida Statute § 90.803(23).

Section 90.803(23) is a provision of a hearsay statute containing an exception for statements of a child victim under certain circumstances. One of the requirements that must be met for the video of the forensic interview to be admissible is that the court conducts a hearing and finds that C.P.'s statements made therein are sufficiently reliable and trustworthy. This Court is not going to find that Baxter lacked probable cause due to her reliance on C.P.'s statements in the video, because courts cannot expect police officers to be able to always correctly identify the admissibility of out-of-court statements. Baxter found the statements made therein to be reliable, and a reasonable police officer could also find C.P.'s statements during the forensic interview to be reliable.

In addition to C.P.'s allegations, Baxter had the pictures of the bruising on C.P.'s buttocks, which could be construed as evidence that Plaintiff used force to stick his penis in C.P.'s buttocks. Therefore, based on the above, the Court finds that Baxter had probable cause, or at least arguable probable cause, for the arrest of Plaintiff for sexual battery under Florida

Statute § 794.011.

Furthermore, Baxter had probable cause, or at least arguable probable cause, to arrest Plaintiff for child abuse under Florida Statute § 827.03. Child abuse under § 827.03(1)(a) is defined as "[i]ntentional infliction of physical or mental injury upon a child." A prudent officer could have believed, in light of the bruising on C.P.'s buttocks, that Plaintiff committed child abuse.

Plaintiff argues that there is a dispute as to whether the spanking he admittedly gave C.P. caused the bruising. For the purpose of this motion, the Court assumes that the spanking did not cause the bruising. However, the issue is not whether Plaintiff's spanking *actually* caused the bruising, but rather, the issue is whether the bruising on C.P.'s buttocks, combined with Plaintiff's admission that he spanked C.P., was sufficient to cause a reasonable police officer to believe that Plaintiff caused the bruising by intentionally inflicting physical injury on C.P. The Court finds that a reasonable police officer could have come to that conclusion.

Plaintiff argues that the fact that C.P. did not require medical attention for the bruising and the fact that C.P. did not complain of pain or discomfort during the car ride undermines the conclusion that the photographs of the bruising could support a charge of child abuse. The fact that C.P. did not complain about pain or discomfort does not affect the fact that she had bruising on her buttocks. While Plaintiff contends that the bruising was not significant, that is merely his opinion, and based on the photographs filed in this case, there was definitely noticeable bruising on C.P.'s buttocks. The Court finds that a reasonable police officer could believe that the bruising on C.P.'s buttocks was severe enough to support a child abuse charge.

Next, Plaintiff argues that Baxter should have investigated other causes for the bruising,

13

such as C.P. sitting all day in the car with her grandparents. Additionally, Plaintiff contends that Baxter should have investigated whether C.P. simply bruises easily, since she had new bruises on her back and buttocks when she went to the Tampa police department. The Court rejects this argument. While a police officer is required to conduct a reasonable investigation, he is not required to take every conceivable step to eliminate the possibility of arresting an innocent person. See Rankin, 133 F.3d at 1436. Thus, a reasonable police officer is not required to obtain "convincing proof" that reaches the same "standard of conclusiveness and probability as the facts necessary to support a conviction." Lee, 284 F.3d at 1195. While probable cause requires more than a suspicion that abuse occurred, the Court finds that the photographs of the bruising, combined with C.P.'s statement that "Nicky spanked me really hard" and Plaintiff's admission that he spanked C.P., could cause a reasonable police officer to conclude that Plaintiff committed child abuse.

Finally, Plaintiff argues that Baxter's investigation was insufficient, because she did not obtain the medical report from Estero Island Medical Center in Fort Meyers. As previously stated, the Court rejects this argument because Baxter requested a copy from Parker and C.P.'s grandmother, but she did not receive one. (Doc. No. 18: Baxter affidavit, ¶ 35). Further, even if she had received and reviewed it, Baxter would have found the medical provider's statement that she noticed "what appear[ed] to be fading bruises on both buttocks." (Doc. No. 17-3). C.P. was seen by that medical provider six days after the alleged incident occurred, so the fact that evidence of the bruising still existed six days later supports a conclusion that the bruising was significant.

Thus, the Court finds that Baxter had actual probable cause, or at least arguable probable

14

cause, to sustain both charges. As such, Plaintiff has not shown that a constitutional violation occurred. Accordingly, Baxter is entitled to summary judgment on Plaintiff's § 1983 claims based on false arrest.[7]

Furthermore, even if there was no arguable probable cause to support the arrest, Baxter would still be entitled to qualified immunity, because Plaintiff has not shown that Baxter violated clearly established law by concluding that C.P.'s statements, coupled with the bruising on her buttocks, was sufficient to support the arrest of Plaintiff. Plaintiff has not cited any case law to show that it was clearly established in June of 2004 that such evidence was not sufficient.

When looking to case law to determine whether a right is clearly established, this Court looks to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state, which in this case is the Florida Supreme Court. See Snider v. Jefferson State Community College, 344 F.3d 1325, 1328 (11th Cir. 2003)(citation omitted). The Florida Supreme Court has acknowledged the "difficulty in delineating a precise line between permissible corporal punishment and prohibited child abuse." Raford v. State, 828 So. 2d 1012, 1020-21 (Fla. 2002). Given the Florida Supreme Court's recognition of the difficulty in defining what is child abuse, this Court finds that there is no clearly established law that put Baxter on notice that the evidence before her was not sufficient to support probable cause for the charge of child abuse.

---

[7]Likewise, Plaintiff's § 1983 claims based on false imprisonment likewise fail, because the Court has found that Baxter had, at least, arguable probable cause for the arrest (and thus his detainment). See Hogan v. City of Montgomery, 2006 WL 3052997, at *6 (M.D. Ala. Oct. 26, 2006).

15

### B. Malicious Prosecution Claim

Plaintiff asserts a malicious prosecution claim based on his arrest for sexual battery and child abuse. Baxter argues that he cannot establish all of the elements of a malicious prosecution claim. The Court agrees.

Malicious prosecution is a violation of the Fourth Amendment, and it can be the basis of a § 1983 claim. See Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003). In order to establish a § 1983 claim based on malicious prosecution, a "plaintiff must prove a violation of his Fourth amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution." Id. Since Plaintiff cannot establish a Fourth Amendment violation due to there being, at the very least, arguable probable cause for his arrest, his § 1983 claim based on malicious prosecution fails. See Hogan, 2006 WL 3052997, at *7; Urbanique Production v. City of Montgomery, 428 F. Supp.2d 1193, 1205, 1218 (M.D. Ala. 2006); Carroll v. Henry County, Ga., 336 B.R. 578, 586 (N.D. Ga. 2006). Therefore, the Court grants Baxter summary judgment on this claim.

### IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendant Josephine Baxter's Motion for Summary Judgment (Doc. No. 17) is **GRANTED**. The Clerk is directed to enter judgment in favor of Baxter and to close the case.

**DONE AND ORDERED** at Tampa, Florida, this 29th day of August, 2008.

Susan C. Bucklew
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record